IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01985-WYD-MJW

ZEILER FARMS, INC.,

    Plaintiff,

v.

ANADARKO E & P COMPANY, LP, f/k/a RME PETROLEUM COMPANY;
ANADARKO LAND COMPANY, f/k/a RME LAND CORP.; and UNIOIL, INC.,

    Defendants.

---

**ORDER**

---

I.     INTRODUCTION

THIS MATTER comes before the Court on Defendant Unioil, Inc's Motion for Summary Judgment, filed March 13, 2008 [#30]. On March 31, 2008 [#32], Defendants Anadarko E & P Company LP f/k/a RME Petroleum Company and Anadarko Land Company f/k/a RME Land Corp. (collectively, the "Anadarko Defendants") filed a Joinder in the Motion for Summary Judgment, insofar as it addresses claims asserted against them in the First Amended Complaint. A Response to the Motion was filed by Plaintiff Zeiler Farms Inc. on April 10, 2008, and a Reply filed on April 25, 2008. For the reasons stated below, I find that the Motion for Summary Judgment should be granted as set forth herein.

II.     BACKGROUND

Pursuant to the Final Pretrial Order [#60], the parties have stipulated to several

material facts.  Plaintiff is the owner of a 147-acre tract of land located in Weld County, Colorado ("the Property").  The mineral estate below the surface of the Property is owned by the Anadarko Defendants subject to a Oil & Gas Lease between the Anadarko Defendants (as lessor) and Defendant Unioil as the mineral lessee (the "Oil & Gas Lease").  In addition, there is a Surface Owner's Agreement, dated September 23, 1983, between Plaintiff and Champlin Petroleum Company (the "Surface Owner's Agreement").  The Anadarko Defendants are the successor to Champlin Petroleum Company with respect to the Surface Owner's Agreement.  At this time, a single oil and gas well exists on the Property at the Colorado Oil and Gas Conservation Commission's ("COGCC") approved center drilling window.  However, the COGCC has issued Defendant Unioil drilling permits to drill four additional vertical wells on the Property.  The dispute in this case centers around the location of the wellheads for the four proposed wells.

Under COGCC rules, the wellheads may be located in one or more of five "drilling windows;" one in the center of each quarter section such that they would be configured like the spots on the 'five side' of a dice.  Plaintiff contends that, if drilled vertically, the wells proposed by Unioil would use and occupy roughly 12 acres of land.  According to Plaintiff, Colorado common law, Colorado statute, the Oil & Gas Lease and the Surface Owner's Agreement, all obligate Defendant Unioil to locate the wellheads in a cluster around the existing well in the center drilling window, which would require that the wells be drilled directionally.  Plaintiff maintains that while directional drilling is more expensive than vertical drilling, it is technologically sound and a reasonable alternative

to the vertical drilling Defendant Unioil proposes.

In its First Amended Complaint, Plaintiff asserts claims for Breach of Contract/Anticipatory Repudiation of the Surface Owner's Agreement; Breach of the Implied Duty of Good Faith and Fair Dealing; violation of the Accommodation Doctrine; and violation of C.R.S. § 34-60-127. In addition, Plaintiff seeks a Declaratory Judgment that (1) Plaintiff is a third party beneficiary of the Oil & Gas Lease; (2) the accommodation doctrine requires Unioil to drill wells directionally at Unioil's cost; (3) under the Oil & Gas Lease, Unioil is required to pay damages for the value of the Property it occupies; and (4) that absent payment by Unioil under the Oil & Gas Lease, the Anadarko Defendants are required to pay damages under the Surface Owner's Agreement for the value of the Property occupied for oil and gas operations.

Defendant Unioil moves for summary judgment claiming that, as a matter of law, the accommodation doctrine is inapplicable to this dispute; that Plaintiff's claim for breach of the implied duty of good faith and fair dealing fails as a matter of law because the duty cannot override express contractual terms and there is no evidence of bad faith; and that Plaintiff's claim for anticipatory repudiation fails as a matter of law because there is no evidence if anticipatory repudiation.

III. ANALYSIS

A. Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56©.

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

    B.    <u>Accommodation Doctrine</u>

Plaintiff's third claim for relief is for violation of the accommodation doctrine, and its fourth claim for relief is for violation of C.R.S. § 34-60-127.  Plaintiff asserts that Defendant Unioil's proposal to drill four vertical wells constitutes excessive use of the surface estate and will decrease the value of the surface estate, and contends that both the accommodation doctrine and C.R.S. § 34-60-127 require Unioil to drill the proposed wells on a directional basis.

The Colorado Supreme Court first articulated the "accommodation doctrine" in

*Gerrity v. Magness*, 946 P.2d 913 (Colo. 1997), where the Court held that "[i]n the absence of statues, regulations, or lease provisions to the contrary, unless the conduct of an operator in accessing, exploring, drilling, and using the surface is _reasonable and necessary_ to the development of the mineral interest, the conduct is a trespass." *Gerrity*, 946 P.2d at 926-27 (emphasis added). The Supreme Court noted that "[s]evered mineral rights lack value unless they can be developed. For this reason, the owner of a severed mineral estate or lessee is privileged to access the surface and 'use that portion of the surface estate that is reasonably necessary to develop the severed mineral interest.'" *Gerrity*, 946 P.2d at 926 (quoting *Notch Mountain Corp. v. Elliott*, 898 P.2d 550, 556 (Colo. 1995)). In 2007, the Colorado General Assembly codified the holding in *Gerrity* in C.R.S. § 34-60-127, which provides that "[a]n operator shall conduct oil and gas operations in a manner that accommodates the surface owner by minimizing intrusion upon and damage to the surface of the land." C.R.S. § 34-60-127(1)(a). "Minimizing intrusion upon and damage to the surface" is defined to mean "selecting alternative locations for wells, roads, pipelines, or production facilities, or employing alternative means of operation, that prevent, reduce, or mitigate the impacts of the oil and gas operations on the surface, where such alternatives are technologically sound, economically practicable, and reasonably available to the operator." C.R.S. § 34-60-127(1)(b). The standard set forth in section 34-60-127 "shall not be construed to prevent an operator from entering upon and using that amount of the surface as is _reasonable and necessary_ to explore for, develop, and produce oil and gas." C.R.S. § 34-60-127(1)(c)(emphasis added). The statute also provides that nothing therein

should be construed to "prevent an operator and a surface owner from addressing the use of the surface for oil and gas operation in a lease, surface use agreement, or other written contract; . . .." C.R.S. § 34-60-127(4)(b). In addition, the statute "shall not be construed to abrogate or impair a contractual provision binding on the parties that _expressly provides for the use of the surface_ for the conduct of oil and gas operations or that releases the operator from liability for use of the surface." C.R.S. § 34-60-127(1)(d) (emphasis added). Defendant Unioil contends that the accommodation doctrine does not apply in this case because scope of permissible surface use is clearly set forth in the Surface Owner's Agreement, and the accommodation doctrine cannot be used to abrogate or impair the terms of that agreement.

Plaintiff and Champlin Petroleum Company entered into the Surface Owner's Agreement on September 23, 1983. As discussed above, the Anadarko Defendants are the successors to Champlin with respect to the Surface Owner's Agreement. A copy of the Surface Owner's Agreement is attached to Defendant Unioil's Motion for Summary Judgment as Exhibit 2 and provides in relevant part that:

> Besides confirming the surface uses expressly set forth below, this agreement is intended to avoid and resolve any and all disputes of whatever nature in connection with the ownership of oil, gas and associated liquid hydrocarbon substances in the described premises, including rights to extract, remove or market such materials, and including any such dispute that may arise hereafter . . .." Surface Owner's Agreement at 2.

. . .

> In consideration of the mutual benefits and of the sum of Ten Dollars ($10) paid by Champlin to Land Owner . . . Land Owner hereby confirms, extends and grants . . . the

> *easements and rights* to enter upon the described premises and to extract, remove, store, transport, and market for its or their account oil, gas, and associated liquid hydrocarbon substances, and *to drill, construct, maintain and use upon, within, and over said premises all oil wells, gas wells, derricks, machinery*, tanks, drips, boilers, engines, pipe, power and telephone lines, roadways, water wells, and without limitation by reason of the foregoing enumeration, any and all other structures, equipment, fixtures, appurtenances, or facilities (all the above being included under the term "facilities") *necessary or convenient* in prospecting and developing for, producing, storing, transporting, and marketing oil, gas, and associated liquid hydrocarbon substances *under or produced from any portion of the described premises* . . .. Surface Owner's Agreement, Section 1, at 2-3 (emphasis added).

. . .

> [The owner of the mineral estate agrees] to pay or cause to be paid to the Land Owner in cash the value on the premises of two and one-half percent (2 ½ %) of all the oil and gas and associated liquid hydrocarbons hereafter produced . . .. Surface Owner's Agreement, Section 2, at 3.

. . .

> [The owner of the mineral estate] . . . shall be required: (a) to pay for all damage to Land Owner's lands, buildings, and growing crops caused by the erection or construction of facilities to be used in connection with oil or gas or associated liquid hydrocarbon operations . . .. Surface Owner's Agreement, Section 4, at 4.

Thus, the Surface Owner's Agreement grants an express easement to the owner of the mineral estate to "enter upon the described premise" and "construct and maintain and use" all "oil wells" or other facilities "necessary or convenient in . . . producing . . . oil, gas and associated liquid hydrocarbon substances." Surface Owner's Agreement, Section 1, at 2-3. In exchange for this use, the owner of the mineral estate agreed to

pay Plaintiff "the value on the premises of two and one-half percent (2 ½ %) of all the oil and gas and associated liquid hydrocarbons . . . produced from . . . or allocated to" the premises, and agreed to pay for "all damage to the Land Owner's lands, buildings and growing crops caused by the erection or construction of facilities to be used in connection with oil or gas or associated liquid hydrocarbon operations."  Surface Owner's Agreement, Sections 2 and 4, at 3-4.  Defendant Unioil notes that courts in other jurisdictions have held that the accommodation doctrine does not apply when the mineral owner relies on an explicit surface use easement.  *See Landreth v. Melendez*, 948 S.W.2d 76, 81-82 (Tex. App. 1997); *Texaco, Inc. v. R.W. Faris*, 413 S.W.2d 147, 149 (Tex. App. 1967).

In response, Plaintiff contends that Defendant Unioil's reliance on the Surface Owner's Agreement is misplaced because that agreement does not "expressly" provide for use of the surface estate.  Plaintiff asserts that the "necessary or convenient" clause in the Surface Owner's Agreement has no relationship to either the drilling of wells or their location, but relates only to the construction of any "facilities" associated with the wells.  Plaintiff further asserts that C.R.S. § 34-60-127(1)(b) relates almost exclusively to the location of wells.  Plaintiff maintains that in order for the Surface Owner's Agreement to govern in lieu of the "reasonable and necessary" standard set forth in C.R.S. § 34-60-127, the Surface Owner's Agreement would have to set forth an agreed upon location for the wells or a waiver of Plaintiff's right to accommodation. In addition, Plaintiff contends that Unioil's actions are inconsistent with various administrative rules promulgated by the COGCC and provisions in Oil and Gas Lease which provides that

"no well shall be drilled upon or into and no facilities shall be installed upon any lands which [Anadarko] owns the mineral rights only, until the consents of [Plaintiff] have been obtained." Oil & Gas Lease at ¶ 16. Finally, Plaintiff contends that even if the term "necessary or convenient" relates directly to wells or their location, that language must be interpreted in the context of modern oil and gas operations.

I agree with Defendant Unioil that the terms of the Surface Owner's Agreement, rather than the accommodation doctrine codified in C.R.S. § 34-60-127, provide the standard for Defendant Unioil's use of the surface estate in connection with its proposed construction of four vertical drilling wells, and I reject Plaintiff's contention that Unioil's attempt to comply with the provisions in the Oil and Gas Lease and other administrative rules promulgated by the COGCC concerning consultation somehow compels application of the accommodation doctrine in this case. Contrary to Plaintiff's assertions, C.R.S. § 34-60-127(1)(d) provides that the "reasonable and necessary" standard set forth in section 127(c) "shall not be construed to abrogate or impair a contractual provision binding on the parties that expressly provides for the use of the surface for the conduct of oil and gas operations . . .." Here, the Surface Owner's Agreement clearly provides that the owner of the mineral estate has an express easement to enter the premises and "construct, maintain, and use . . . all oil wells . . . *necessary or convenient* in prospecting and developing . . . oil." Surface Owner's Agreement at 2-3 (emphasis added). Construing the plain and ordinary meaning of the terms in the Surface Owner's Agreement, I find that the phrase "necessary or convenient" applies to the construction and location of oil wells on the Property. I

further find that it would be contrary to Colorado Law to apply the "reasonable and necessary" standard found C.R.S. § 34-60-127 in lieu of the "necessary or convenient" standard the parties bargained for when they entered the Surface Owner's Agreement. *See Amoco Prod'n Co. v. Thunderhead*, 235 F.Supp.2d 1163, 1173 (D. Colo. 2002) (the rule of reasonable accommodation applies in the absence of lease provisions to the contrary); *see also Landreth v. Melendez*, 948 S.W.2d 76, (Tex. App. 1997) (accommodation doctrine did not apply where reservation of rights expressly included the right to employ "all usual, necessary and convenient means" to explore for, produce and remove minerals); *Texaco Inc. v. R.W. Faris*, 413 S.W.2d 147 (Tex. App. 1967) (where express use of surface estate is set forth in an easement, the provisions of the easement control rather than any implied right to "reasonably necessary" use).

Next, I turn to Plaintiff's contention that the " necessary or convenient" language of the Surface Owner's Agreement must be interpreted in the context of modern oil and gas operations. According to Plaintiff, the obligation to drill wells on a directional basis is not inconsistent with the right of an oil and gas lessee to enter upon the surface do what is "necessary or convenient" to operate the mineral estate. Plaintiff asserts that issues of fact remain concerning whether directional drilling is practical under the circumstances presented here, and whether Unioil's desire to drill wells vertically imposes an undue or unnecessary burden on Plaintiff. Plaintiff's arguments, while perhaps relevant to the proper interpretation of the phrase "necessary or convenient" in the Surface Owner's Agreement, have no bearing on Defendant Unioil's arguments with respect to the application of the accommodation doctrine or C.R.S. § 34-60-127. The

only issue presented in Defendant Unioil's Motion for Summary Judgment is whether the accommodation doctrine and C.R.S. § 34-60-127 apply to the parties' dispute, and the parties have not requested resolution of any issues concerning the proper interpretation of the terms in the Surface Owner's Agreement, or whether Defendants' conduct has breached those terms.

Therefore, for the reasons set forth above, Defendants are entitled to summary judgment in their favor as to Plaintiff's third and fourth claims for relief for violation of the accommodation doctrine and violation of C.R.S. § 34-60-127.

### C. Duty of Good Faith and Fair Dealing

Plaintiff's second claim for relief is for breach of the implied duty of good faith and fair dealing. Colorado law imposes a duty of good faith and fair dealing in every contract. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract." *City of Golden*, 138 P.3d at 292. "The good faith performance doctrine attaches to contracts 'to effectuate the intentions of the parties or to honor their reasonable expectations.'" *Id.* (quoting *Amoco Oil*, 908 P.2d at 498). "The duty of good faith and fair dealing may be relied upon 'when the manner of performance under a specific contract term allows for discretion on the part of either party.'" *Id.* (quoting *id.*) "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party to set or control the terms of performance after formation.'" *Id.* However, the implied covenant of good faith and fair dealing may not be used to

-11-

invalidate contractual terms that the parties negotiated and agreed on, including a right to terminate a contract. *See Grossman v. Columbine Medical Center*, 12 P.3d 269, 271 (Colo. 2000) ("the termination clause expressly sets forth the right of both parties to terminate the contract for any reason. Hence the physician cannot rely on the implied duty of good faith *a*nd fair dealing to circumvent terms for which he expressly bargained"); *see also Salt Lake Tribune Publishing Co., LLC v. AT&T Corp.*, 320 F.3d 1081*,* 1103-04 (10th Cir. 2003) ("[W]here the subject in dispute 'is expressly covered by the contract ... the implied duty to perform in good faith does not come into play.")

Defendant Unioil contends that the good faith and fair dealing doctrine cannot be used to contradict the express grant of rights set forth in the Surface Owner's Agreement to enter the Property and construct oil wells as "necessary or convenient" for oil and gas operations, and that there is no evidence of bad faith. In response, Plaintiff notes that the Surface Owner's Agreement does not define either the number of wells to be drilled or their location, and that these concepts were left to the discretion of the lessee of the mineral estate under the common law concept of "due regard." As discussed in *Amoco Oil Co., supra*, the duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price or time. *See Amoco Oil Co.*, 908 P.2d at 498 ("[t]he covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party."). "Thus, the implied covenant of good faith and fair dealing is breached when a party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party

of the benefit of the contract." *ADT Security Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007). Here, the Surface Owner's Agreement does not grant Defendant Unioil discretionary surface use, but rather grants an easement to "drill, construct, maintain and use" the surface in a manner "necessary or convenient in prospecting and developing for, producing, storing, transporting, and marketing oil, gas and associated liquid hydrocarbon substances . . .." I find that the phrase "necessary or convenient," is not a discretionary term. Unlike terms for an undefined quantity, price, or time, which allow one party set or control the terms of performance, the phrase "necessary or convenient" can be interpreted under accepted principles of contract interpretation. *See Thompson v. Md. Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004) ("[t]he primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties."). Therefore, the implied duty of good faith does not apply to the term "necessary or convenient" contained in the Surface Owner's Agreement, and Defendants are entitled to summary judgment as to Plaintiff's Second Claim for Relief based on violation of the doctrine of good faith and fair dealing.

    D.    <u>Anticipatory Repudiation</u>

Finally, Defendant Unioil contends that Plaintiff first claim for relief for anticipatory repudiation fails as a mater of law because Plaintiff has no evidence of anticipatory repudiation. Defendant Unioil states in its Motion for Summary Judgment that it intends to restore the surface of the land after completing the erection or construction of its facilities, which will likely cause no damage to the land. Defendant Unioil acknowledges that if there are surface damages as defined by the Surface Owner's Agreement it will

reimburse Plaintiff for those damages in accordance with the Surface Owner's Agreement.

An anticipatory repudiation of contract may occur upon a party's "definite and unequivocal manifestation of its intention that it will not perform as required by the contract." *See Highlands Ranch University Park, LLC v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1023 (Colo. App. 2005). In this case, Plaintiff's evidence of an "unequivocal manifestation" is page 3 of the Scheduling Order where Defendant Unioil states that "no surface damages have occurred" and "there will in all probability never be any surface damage resulting from Unioil's operations." According to Plaintiff, both the Oil & Gas Lease and the Surface Owner's Agreement provide that Defendant Unioil shall pay for "all damage to the land" and that such damage "includes at least the value of the loss of the use of the land during Unioil's occupancy upon the premises."

In light of Defendant Unioil's representations in its Motion for Summary Judgment that it will comply with the terms of the Surface Owner's Agreement, I find that Plaintiff has failed to demonstrate that Defendant Unioil "unequivocally" manifested an intent not to perform its obligations under the contract. Here, the dispute is not whether Defendant Unioil has repudiated its obligation to pay for "damage to the land" under the Oil & Gas Lease and the Surface Owner's Agreement, but whether that phrase includes the damage Plaintiff may sustain through loss of the use of his land. Resolution of this issue requires interpretation of the damages provisions in the Oil & Gas Lease and the Surface Owner's Agreement. However, the parties have not requested interpretation of the agreements, and the only issue before the Court at this time is the validity of

Plaintiff's claim under the doctrine of anticipatory repudiation. For the reasons stated herein, I find that Plaintiff has not met its burden of establishing a triable issue of fact with respect to its claim for anticipatory repudiation, and that summary judgment is appropriate with respect to that claim.

IV.     CONCLUSION

In light of the foregoing, it is hereby

ORDERED that Defendant Unioil, Inc's Motion for Summary Judgment, filed March 13, 2008 [#30] is **GRANTED**. It is

FURTHER ORDERED that the portion of Plaintiff's First Claim for Relief based on Anticipatory Repudiation, and Plaintiff's Second, Third and Forth Claims for Relief are **DISMISSED WITH PREJUDICE**.

Dated:  March 31, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge